Sharon Cole STARK, Appellant,

v.

Feleciea COLE, James B. Marks and Western
Surety Company, Respondents.

No. 23868.

Kansas City Court of Appeals.

Missouri.

Dec. 2, 1963.

Crouch & Fitzgerald, Warrensburg, for appellant.

Houtchens & Houtchens, Clinton, for respondent Western Surety Co.

Poague, Brock & Wall, Clinton, for respondent James B. Marks.

CROSS, Judge.

Plaintiff-appellant Sharon Cole Stark is an heir at law of her deceased father and a beneficiary of his estate. At the time of his death in 1955 she was a minor thirteen years old. She attained her majority on November 6, 1961 and thereafter on June 16, 1962 brought this suit for an accounting against defendants Feleciea Cole, James B. Marks and Western Surety Company, who are, respectively, the originally appointed administratrix of the estate, the succeeding administrator de bonis non, and the surety on the bond of the administratrix. Plaintiff appeals from a judgment of the trial court dismissing her first amended petition.

The allegations of the petition are, in substance, here set out: (1) Plaintiff's father departed his life on or about January 14, 1954, and was survived by defendant Feleciea Cole, his wife, and by two sons and a daughter who is plaintiff herein. (2) At the time of her father's death plaintiff was an infant of 13 years. She became of legal age on November 6, 1961. (3) On October 19, 1954, the Probate Court appointed defendant Feleciea Cole as administratrix of the estate. She duly qualified and filed her fiduciary bond in the sum of $3000.00, with defendant Western Surety Company as

surety, binding her to the faithful performance of her duties. (4) Defendant administratrix did not faithfully discharge her trust and breached the conditions of her bond in that some time prior to December 5, 1955, she wrongfully appropriated $3000.00 of the estate's funds to her own use and has never accounted to plaintiff for her share or interest therein. (5) Thereafter, the probate court revoked the appointment of Feleciea Cole as administratrix and appointed defendant Marks as administrator de bonis non, in which capacity he acted until final settlement was made on December 5, 1955. (6) Thereafter defendant Feleciea Cole formally waived all of her interest in the estate. (7) During the period from June 3, 1955, to December 5, 1955, the defendants entered into an illegal combination and conspired together to deprive plaintiff of her interest in the assets of the estate, in that (a) defendant Western Surety Company, responding to Feleciea Cole's default as administratrix, paid into the estate the sum of $2988.48; (b) thereafter the defendant Marks as administrator de bonis non paid claims and costs of the estate and retained a balance in his possession available for distribution under the laws of descent and distribution; (c) defendant Marks did not make such distribution to the persons lawfully entitled thereto, including plaintiff, but (d) "did on or about the 3rd day of December 1955, conspire, confederate and fraudulently cooperate with the Defendant Western Surety Company and the Defendant Feleciea Cole to illegally and unlawfully pay said balance in said estate to the Defendant Western Surety Company, such defendant having no interest in said estate and being not entitled to the said balance therein, all without proper authorization or order of the Probate Court of Henry County, Missouri, and did thereafter conclude and close said estate". (8) All of the aforesaid acts and agreements of the defendants and the payment of the $2300.00 balance of estate assets to defendant Western Surety Company and the closing of the estate by defendant Marks were made and done without plaintiff's knowledge or consent and at a time when she was a minor without any legally appointed guardian to protect her interest. (9) The defendant Western Surety Company has in its possession, illegally and without authority of any court, estate funds totaling $766.66 that belong to and are the property of plaintiff. (10) Despite plaintiff's due demand, defendant(s) have refused to account for or pay to plaintiff the sum of $766.66, with interest thereon, which represents her one-third share in the remaining estate assets.

The petition prays a decree of court requiring defendants to account to plaintiff for the sum of $766.66, with interest, for a judgment in plaintiff's favor against defendants for the sum of $766.66, with interest, and for other and further relief generally.

Defendant Feleciea Cole made no appearance, filed no pleading and stands in default. Defendant Marks filed a motion to dismiss plaintiff's petition on the general ground that it fails to state a cause of action. Defendant Western Surety Company likewise filed a motion to dismiss the petition on the grounds (1) that the pleading fails to state sufficient facts upon which the court might grant relief to plaintiff; (2) that plaintiff is barred by the limitation provided in Section 473.213 V.A.M.S.; (3) that since the intended suit is an action on an administrator's bond, it is improperly brought in plaintiff's name and must, by requirement of law, be brought in the name of the state, and (4) that the decree of final distribution in the estate, from which no appeal was taken, is a final judgment barring the suit. The trial court sustained both motions without specifying any reason for its action.

Absent from this appeal is any question of whether plaintiff's action is barred by the limitation of Section 473.213 V.A.M.S. Although that contention was made in one of the motions to dismiss, it is not before us here. Defendants have abandoned the point inasmuch as their brief is silent on the subject. For that matter, it is

our opinion that the statute of limitation applicable in this case would be the five year statute Section 516.120(5) V.A.M.S., since this suit appears to be an attempted "action for relief on the ground of fraud" * * * not a suit on the surety bond. Plaintiff filed her action within less than a year after she became twenty-one years of age. Therefore, under the saving provisions of Section 516.170 V.A.M.S. her suit was timely and unaffected by the bar of any limitation.

The remaining issues raised by the briefs of the parties and requiring decision are (1) whether the petition was properly filed in the name of plaintiff Sharon Cole Stark or should have been brought in the name of the State of Missouri as defendants contend, (2) whether the petition is sufficient to state a cause of action against defendants for an accounting, and, (3) whether or not the attempted action is a collateral and unauthorized attack on a final and conclusive judgment. These questions will be considered in that order.

■ Defendants base their contention that the suit should have been brought in the name of the state on argument that it is an action on the administratrix's bond, governed by Section 473.217 V.A.M.S., which provides that "The bond of an executor or administrator may be sued on at the instance of any party injured, in the name of the state, to the use of such party * * ". We do not share defendants' view regarding the nature of the suit. We consider that plaintiff's case is bottomed on allegations of fraud and conspiracy on the part of defendants, designed to deprive plaintiff of her distributive share of the estate, all occurring *after* the surety had performed its obligation under the bond by paying into the estate the sum of $2988.48. The cause of action pleaded is one personal to plaintiff, and unaffected by the cited statute. The suit was properly brought in her own name.

■ Nor is there any merit in defendants' insistence that the petition failed to state a cause of action against them for an accounting. Defendants are not supported in this contention by their own cited authority, which discloses that a sufficient ground for invoking equitable jurisdiction for an accounting is "the existence of a fiduciary relationship with a duty resting upon the defendant to render an account". 1 Am.Jur.2d, Accounting, Sec. 51, p. 423 (quoted in defendants' brief). The same authority further states in Sec. 52, pp. 424–425, "Courts of equity have original jurisdiction to state and settle accounts, or to compel an accounting, where a fiduciary relationship exists between the parties and a duty rests upon the defendant to render an account".[1] Furthermore, equity has jurisdiction to compel an accounting where fraud is charged, and may exercise jurisdiction in actions arising out of a tort and decree an accounting where there is a proven allegation of fraud, especially where in addition there is an additional ground for jurisdiction such as the existence of a fiduciary relationship. See 1 Am.Jur.2d, Accounts and Accounting, Sec. 55, p. 428; also see Expansion Realty Co. v. Geren, Mo.App., 170 S.W. 928. All of the foregoing is particularly supportive of the propriety of an equitable accounting in this case—considering that the highest order of fiduciary relationship flows from the trust owed by an administrator to an infant beneficiary of the estate in his hands.

■ On the remaining appeal issue we rule that defendants are correct in their contention that under the facts alleged in

1. Citing: State ex rel. Brickey v. Nolte, 350 Mo. 842, 169 S.W.2d 50; State ex rel. Barker v. Chicago & A. R. Co., 265 Mo. 646, 178 S.W. 129. Also see: Dahlberg v. Fisse, 328 Mo. 213, 40 S.W.2d 606; Robert v. Davis, (Mo.App.), 142 S.W.2d 1111; Am. Button Co. v. Weishaar, Mo. App., 170 S.W.2d 147; Leone v. Bilyeu (Mo.App.), 238 S.W.2d 317; McKinley v. Durbin (Mo.App.), 231 S.W.2d 286; Richter v. Frieden (Mo.App.), 243 S.W. 2d 783.

plaintiff's petition the judgment of the probate court finally settling the estate and discharging the administrator, which amounts to an adjudication that the sum of $2300.00 paid back to the surety was a proper item of credit, is conclusive against any and all proceedings other than a direct attack to set aside and vacate the same on the ground of fraud or other recognized grounds for equitable relief. Included among numerous Missouri decisions so holding are Gorg v. Rutherford, Mo.App., 31 S.W.2d 585 and Mueller v. Grunker, Mo.App., 123 S.W. 469, (both cited by defendants). "[A] final settlement and order of distribution in the probate court has the force of a judgment as to all matters necessarily involved in the settlement" * * * "The judgments of probate courts are as impregnable to collateral attack as the judgments of other courts of record". Einstein v. Strother, Mo.App., 182 S.W. 122. Plaintiff's petition is clearly an attempted collateral attack on a final, conclusive and binding judgment which stands as a bar to the prosecution of the action now pleaded against defendants. Hence, it pleads no maintainable cause of action.

■ As above indicated, probate court judgments are subject to direct attack in a court of equity for fraud, collusion, accident or mistake to the same extent as are all judgments of courts of record, and may be set aside if sufficient grounds for so do-

ing are pleaded and proven.[2] The fraud for which a final settlement will be set aside is of the same character as that required to set aside any other final judgment of a court of competent jurisdiction, to-wit, fraud arising on matters extrinsic and collateral to the subject matter of controversy or practiced in the very procurement or concoction of the judgment, and not on the very issues presented by the judicial inquiry. Fraud inhering in the cause of action itself, false testimony, or fraud within the issues on the merits of the case are not considered as sufficient grounds, since all such matters are foreclosed by the judgment.[3]

■ Specific limitations, applicable in all cases and under all circumstances, upon granting relief against judgments have never been laid down. As stated by Judge Storey in his Equity Jurisprudence, quoted in Clyce v. Anderson, 49 Mo. 37, "Fraud is infinite, and were a court of equity once to lay down rules how far they would go, and no farther, in extending their relief against it, or to define strictly the species of evidence of it, the jurisdiction would be cramped and perpetually eluded by new schemes which the fertility of man's invention would contrive". Fraud, further states the same authority, "properly includes all acts, omissions and concealments which involve a breach of legal or equitable duty, trust or confidence justly imposed, and are

2. Among the numerous Missouri cases so holding are:
 Mueller v. Grunker, Mo.App., 123 S.W. 469
 Gorg v. Rutherford, Mo.App., 31 S.W.2d 585
 Smith v. Hauger, 150 Mo. 437, 51 S.W. 1052
 Nelson v. Barnett, 123 Mo. 564, 27 S.W. 520
 McLean v. Bergner, 80 Mo. 414
 Einstein v. Strother, Mo.App., 182 S.W. 122
 Michie v. Grainger, Mo.App., 129 S.W. 983
 Standard v. Lacks, 25 Mo.App. 64
 Weinerth v. Trendley, 39 Mo.App. 333
 Baldwin v. Dalton, 168 Mo. 20, 67 S.W. 599

 Houts v. Shepherd, 79 Mo. 141
 Walther v. Null, 233 Mo. 104, 134 S.W. 993
 Peeters v. Schultz et al., 300 Mo. 324, 254 S.W. 182
 Warden v. Busbee, Mo.App., 89 Mo.App. 113
 Clyce v. Anderson, Executor, 49 Mo. 37

3. See Overton v. Overton, 327 Mo. 530, 37 S.W.2d 565
 Peeters v. Schultz et al., 300 Mo. 324, 254 S.W. 182
 Einstein v. Strother, Mo.App., 182 S.W. 122
 Baldwin et al. v. Dalton et al., 168 Mo. 20, 67 S.W. 599
 Walther v. Null, 233 Mo. 104, 134 S.W. 993

injurious to another, or by which an undue and unconscientious advantage is taken of another".

Instances of sufficient cause to set aside judgments are found in the following quoted excerpt from the opinion in United States v. Throckmorton, 98 U.S. 61, 65, 25 L.Ed. 93, a leading case, which was quoted with approval in Overton v. Overton, 327 Mo. 530, 37 S.W.2d 565, and thereby incorporated into the body of Missouri law: "But there is an admitted exception to this general rule (that a defeated party will not be heard a second time on the merits of his defeat) in cases where, by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, or by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing".[4]

Directly in point here is the following statement by Judge Bliss in Clyce v. Anderson, supra, quoted as follows: "Courts will scrutinize more closely an *ex parte* judgment—and especially when the person obtaining it holds a fiduciary relation to those affected by it—than one obtained by litigation between equals. Administrators, etc., are trustees; they alone are supposed to be thoroughly advised in regard to the trust funds; their exhibits must necessarily be greatly relied upon by those interested in the fund; their settlements are often practically *ex parte,* with no one to scrutinize their accounts but the Probate Courts, which are easily deceived, and which, unfortunately, are often negligent, and trust too much to the good faith and intelligence of the administrator. With such opportunities for overcharging, suppression and concealment, and with the fiduciary and trust relations held by them, administrators, executors and guardians are under peculiar obligations to see to the accuracy of their accounts, and that judgment of approval is not based upon any wrong showing of theirs. While those interested in the estate to be settled may appear and contest the settlement account, still the trustee none the less represents the estate as well as himself, and cannot throw

4. In Baldwin v. Dalton, 168 Mo. 20, 67 S.W. 599, it is held that collusion between the executor or administrator and the probate judge to approve a false settlement is a sufficient basis to directly attack it.

In Fitzpatrick v. Stevens, Mo.App., 89 S.W. 897, a probate court judgment on a claim was set aside for fraud held to have been perpetrated on the court in its procurement because the demand was supported by a false affidavit. This court said, "That the instrument which set the (probate) court in motion involved none but intrinsic facts made it none the less a fraudulent device, without which the court could not have acted. Through it the proceedings reached the hand of the court tainted with fraud. To thrust a thing so corrupt in its inception into court was a fraud upon the administration of justice, and no judicial act innocently performed for its effectuation could serve to purge it of corruption. The case, therefore, possesses all of the elements for equitable action".

Also see Kennard v. Wiggins, 349 Mo. 283, 160 S.W.2d 706, a suit to declare void a judgment contrary to a minor's interest on the grounds of "fraud, mistake or accident". Relief was granted because the guardian ad litem took certain action in the original case "in excess of his lawful authority, and by mistake of his counsel, and against the interests of said minor". The Supreme Court observed that to refuse redress "would be a reproach to the administration of justice".

off his trust relation by giving notice that he will close it up. Under these circumstances any omission or concealment that wrongs the estate must be considered as fraudulent, without reference to the motive that dictates it. We are often deceived by the same word in different associations and relations. A judgment is usually the result of a contest between parties when neither are under legal obligations to make greater disclosures than their interest requires. In such a case it may be no fraud to neglect to communicate facts that would materially affect the result. But in a settlement like the one under consideration nothing can be innocently concealed, and in applying the term 'judgment' to the approval of such a settlement we should not overlook its different character and the different relations of those interested in it".

We are reluctant to let this judgment of dismissal stand. Assuming the truth of plaintiff's allegations, which is proper for the purpose of this appeal, it must be said that she has endured a legal grievance at the hands of persons legally charged with the duty of her protection as an infant. She addresses a timely filed suit to a court of equity and pleads facts showing her entitlement to relief except for the bar of what amounts to an ex parte judgment.

 We conclude that the judgment which now stands in plaintiff's way of recovery should bear further scrutiny by a court of equity—if there are additional facts to be pleaded tending to impugn it for fraud or kindred cause. If plaintiff has rights growing out of the transaction set forth in her petition, but has misconceived the remedy necessary for their enforcement, and, if she is able to plead facts sufficient to show her entitlement to a decree in equity avoiding the final settlement insofar as it affects the immediate parties, we believe that the cause of justice would best be served by affording her further opportunity to do so. Under such circumstances this court has discretion in the matter and may remand the cause to permit the petition

to be so amended. See Jensen v. Wilson Township, Gentry County, 346 Mo. 1199, 145 S.W.2d 372; also cases digested in Note 1034 to Section 512.160 V.A.M.S. Such amendment may be accomplished by adding another count to the petition. Then, as an arm of equity, with the duty to adjudicate all rights between the parties, the circuit court would have full power to nullify the final settlement insofar as it affects plaintiff's rights in the premises and to require an accounting by defendants, if the pleaded facts and evidence so require. Since the probate court retains no jurisdiction and could acquire none, the final settlement would not be disturbed otherwise.

Accordingly, and under authority conferred by Civil Rule 83.13, V.A.M.R., the judgment is reversed and the cause is remanded to the circuit court with directions that plaintiff be allowed to amend her petition, if she so elects, and that further proceedings be conducted in the cause not inconsistent with this opinion, or, if plaintiff does not so desire to amend her petition, to re-enter judgment for defendant.

All concur.